UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUPER 8 WORLDWIDE, INC., a South Dakota Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MI PTS8 LLC, an Arizona Limited Liability Company; VENKAT IYER, an individual; and ROBERT A. MCCUNE, an individual,<br><br>Defendants. | Civil Action No. 21-cv-9579 (JXN)(JRA)<br><br>**OPINION** |

**NEALS**, District Judge:

Before this Court is Plaintiff Super 8 Worldwide, Inc.'s ("Plaintiff") unopposed motion for default judgment against Defendant MI PTS8 LLC ("MI PTS8"), pursuant to Federal Rule of Civil Procedure 55(b) (ECF No. 76), and unopposed motion for summary judgment against Defendant Venkat Iyer ("Iyer"), pursuant to Federal Rule of Civil Procedure 56 (ECF No. 77). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b), respectively. The Court has carefully considered Plaintiff's submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated below, Plaintiff's motion for default (ECF No. 76) is **GRANTED** against MI PTS8; and Plaintiff's motion for summary judgment (ECF No. 77) is **GRANTED** against Iyer as to Count Six only. Plaintiff is entitled to $63,064.84 in liquidated damages, and $56,322.10 in interest on the liquidated damages award. The Court **RESERVES** decision on attorneys' fees and costs pending the Court's review and receipt of supplemental submissions as instructed herein.

I. **BACKGROUND**

A. **Factual Background**

This case arises out of Plaintiff's attempts to collect outstanding debts and damages from MI PTS8 and Iyer's default of the parties' franchise agreement. Plaintiff is a South Dakota corporation with its principal place of business in New Jersey, which provides customers access to a "guest lodging facility" franchise network. (Plaintiff's Statement of Undisputed Material Facts (ECF No. 78) ("PSOF")[1] ¶¶ 1-2). Plaintiff's franchise system is "comprised of federally registered trade names, service marks, logos, and derivations thereof (the "Super 8® Marks"), as well as the distinctive Super 8® System." (*Id.* at ¶ 3). Plaintiff neither owns nor operates any hotels. (*Id.*) Iyer and Robert A. McCune ("McCune") are the only members of MI PTS8. (*Id.* at ¶ 4; ECF No. 31 ("Amended Complaint" or "Am. Compl.") ¶ 5).

On or about June 1, 2019, Plaintiff and MI PTS8 entered into a Franchise Agreement whereby MI PTS8 would operate a 42-room Super 8® guest lodging facility located at 1202 East White Mountain Boulevard, Pinetop, Arizona 85028, designated as Site No. 08416-15325-03 (the "Facility"). (*Id.* at ¶ 5). That same day, Plaintiff and MI PTS8 also entered into a SynXis Subscription Agreement (the "SynXis Agreement"), which governed MI PTS8's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhances to same. (*Id.* at ¶ 7). Iyer executed the Franchise Agreement and SynXis Agreement on behalf of MI PTS8. (*Id.* at ¶¶ 6, 8). Pursuant to the Franchise Agreement, MI PTS8 was obligated to operate the Facility for a period of twenty (20) years. (*Id.* at ¶ 9). The Franchise Agreement and SynXis Agreement required that MI PTS8 make certain payments to Plaintiff for royalties, system assessment fees, taxes, interest, SynXis fees, and other

---

[1] For brevity, all citations to Plaintiff's Rule 56.1 statement incorporates the evidentiary citations contained therein.

2

fees (collectively, "Recurring Fees"), as well as interest on fees or debts that were past due. (PSOF ¶ 10; Affidavit of Kendra Mallet in support of Plaintiff's Motion for Summary Judgment ("Mallet MSJ Aff."), Ex. A, ECF No. 77-6 at 20-21, 44-46).[2] Moreover, the Franchise Agreement provided Plaintiff the opportunity to terminate the agreement before the end of the twenty-year term in two circumstances: (1) if MI PTS8 discontinued operating the Facility as a Super 8® hotel; and/or (2) if MI PTS8 lost possession or the right to possess the Facility. (PSOF ¶ 17). In the event that the Franchise Agreement was terminated under one of these two circumstances, Section 12.1 of the Franchise Agreement provides that MI PTS8 would pay Plaintiff liquidated damages. (*Id.* at ¶ 18). Moreover, early termination made MI PTS8 responsible for reimbursing Plaintiff for any outstanding recurring fees and costs. (*Id.* at ¶ 31). Finally, as part of the Franchise Agreement, Iyer and McCune signed a Guaranty, which upon a default of the Franchise Agreement, made them liable for money MI PTS8 owed to Plaintiff. (PSOF ¶ 25; Affidavit of Kendra Mallet in support of Plaintiff's Motion for Default Judgment ("Mallet MDJ Aff.") ECF No. 76-6 at ¶ 13).

In a June 29, 2020 letter, Plaintiff acknowledged that MI PTS8 defaulted on the Franchise Agreement by losing possession of the Facility, and informed MI PTS8 that, due to the default, it was terminating the agreement early. (PSOF ¶¶ 30-31). The letter further notified MI PTS8 that it was required to pay Plaintiff liquidated damages and all outstanding recurring fees and costs, pursuant to the terms of the Franchise Agreement. (*Id.* at ¶ 31).

### B. Procedural History

On April 16, 2021, Plaintiff filed a six-count Complaint against MI PTS8, Iyer, and McCune. (ECF No. 1). On July 20, 2021, MI PTS8, Iyer, and McCune filed an Answer to the

---

[2] For sake of clarity, when citing Plaintiff's briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.

3

Complaint. (ECF No. 13). On May 23, 2022, after leave to file an amended complaint was granted (ECF No. 30), Plaintiff filed an Amended Complaint, which corrected the spelling of McCune's last name. (ECF No. 31). The Amended Complaint seeks an Order directing: (i) MI PTS8 to account for all revenue derived from the Facility (First Count); (ii) MI PTS8 to pay $84,000.00 in liquidated damages (Second Count); (iii) MI PTS8 to pay actual damages if liquidated damages are not awarded (Third Count); (iv) MI PTS8 to pay $50,282.32 in Recurring Fees (Fourth Count); (v) MI PTS8 to pay damages for unjust enrichment if Recurring Fees are not awarded (Fifth Count); and (vi) Iyer and McCune to pay liquidated damages or actual damages and Recurring Fees for MI PTS8's breach, which Iyer and McCune are allegedly liable for under the Guaranty Agreement (Sixth Count). (Am. Compl. ¶¶ 25-51). On October 10, 2022, MI PTS8, Iyer, and McCune filed an Answer to the Amended Complaint. (ECF No. 36).

Thereafter, on December 20, 2022, this matter was administratively terminated pending the consummation of the parties' settlement. (ECF No. 41). The Court subsequently entered an Order dismissing the action with prejudice on February 22, 2023. (ECF No. 42). On August 30, 2023, the Court subsequently vacated the Notice of Dismissal and reinstated Plaintiff's Amended Complaint and MI PTS8, Iyer, and McCune's Answer to the active trial list. (ECF No. 49).

On November 3, 2023, Plaintiff and McCune entered into a confidential settlement agreement, which satisfied the outstanding Recurring Fees and part of the liquidated damaged owed by Defendants. (PSOF ¶ 35). On November 16, 2023, McCune was dismissed, without prejudice, as a result of the settlement agreement. (ECF No. 54). As a result of Plaintiff's settlement with McCune, Plaintiff now seeks to recover $115,250.64, inclusive of the remainder of the liquidated damages and interest accrued, plus attorneys' fees and costs. (PSOF ¶¶ 35, 45).

On February 6, 2024, the Court granted Plaintiff's informal request to reinstate the matter

4

to the Court's active docket. (ECF No. 59). The next day, Michael A. Orozco, Esq., of Price, Meese, Shulman & D'Arminio, P.C. (the "Firm"), counsel for MI PTS8, Iyer, and McCune, filed a motion for leave to withdraw as the attorney for MI PTS8 and Iyer. (ECF No. 60). On March 4, 2024, the Honorable Jose R. Almonte, U.S.M.J. ("Judge Almonte") granted the Firm's motion for leave to withdraw as counsel for MI PTS8 and Iyer and relieved the Firm as counsel for MI PTS8 and Iyer. (ECF No. 63). Additionally, in pertinent part, Judge Almonte ordered MI PTS8 to enter the appearance of new counsel by April 5, 2024. (*Id.*)

On May 24, 2024, with leave granted (ECF No. 65), Plaintiff filed a motion to strike MI PTS8 and Iyer's Answer to the Amended Complaint and enter default. (ECF No. 66). On October 1, 2024, Judge Almonte filed a Report and Recommendation ("R&R") recommending that the Court grant Plaintiff's motion to strike MI PTS8's Answer and deny Plaintiff's motion to strike Iyer's Answer. (ECF No. 67). On October 17, 2024, the Court adopted Judge Almonte's R&R and granted Plaintiff's motion to strike with respect to MI PTS8 and denied with respect to Iyer. (ECF No. 68). The Court also ordered that Plaintiff may (i) request that the Clerk of Court enter default against MI PTS8 and file a motion for the entry of default judgment, and (ii) move for summary judgment against Iyer only. (*Id.*)

On October 31, 2024, Plaintiff requested that the Clerk of Court enter default against MI PTS8, which was entered on November 1, 2024. (ECF No. 70; Certification of Bryan Couch in support of Plaintiff's Motion for Default Judgment ("Couch MDJ Cert."), ECF No. 76-5 at ¶ 15). On November 4, 2024, Plaintiff served MI PTS8 a copy of the Entry of Default. (Couch MDJ Cert., Ex. A).

On January 6, 2025, Plaintiff filed a motion for default judgment against MI PTS8 only. (ECF No. 76). MI PTS8 "is not an infant or otherwise incompetent" and is not currently in military

5

practice. (Couch MDJ Cert. ¶ 18). MI PTS8 has not filed a responsive pleading to the Amended Complaint other than the Answer, which was stricken. Further, MI PTS8 has not requested an extension of time to respond.

On January 6, 2025, Plaintiff also filed a motion for summary judgment against Iyer as to the Sixth Count of the Amended Complaint only. (ECF No. 77-78). Iyer has not opposed the motion for summary judgment. These matters are now ripe for consideration.

## II.     LEGAL STANDARD

### A.  Motion for Default Judgment Pursuant to Rule 55

Federal Rule of Civil Procedure 55 governs default proceedings and permits a plaintiff, following entry of default, to seek default judgment against a defendant who fails to answer or otherwise respond to a pleading. Fed. R. Civ. P. 55(b). The Court may enter default judgment under Federal Rule of Civil Procedure 55(b)(2) against a properly served defendant who does not file a timely responsive pleading. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Although cases are to be decided on their merits where practicable, whether to grant a motion for default judgment is "largely a matter of judicial discretion." *Id.* In ruling on the motion, the Court accepts the well-pleaded factual allegations in the complaint as true but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages," and must "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* at 535-36 (citation modified).

Before granting default judgment, "the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (citation modified). Additionally,

6

the Court must "'(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages.'" *Super 8 Worldwide, Inc. v. Mahesh, Inc.*, No. 18-16336, 2019 WL 3244878, at *2 (D.N.J. July 19, 2019) (quoting *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015)). "Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages." *Moroccanoil*, 2015 WL 6673839, at *1 (citing *Comdyne, I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Further, the Court must "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

    **B.  Motion for Summary Judgment Pursuant to Rule 56**

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted). There can be "no genuine

7

[dispute] as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. DISCUSSION

### A. Default Judgment is Granted Because MI PTS8 Did Not Answer the Complaint and Plaintiff Pled a Plausible Claim of Breach of Contract.

i. Subject Matter Jurisdiction

District courts have original subject matter jurisdiction in civil actions when the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). For individuals, "[c]itizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation.'" *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)). "'A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (*Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). However, "the citizenship of an LLC is determined by the citizenship of its members." *Id.* (quoting *Zambelli*

8

*Fireworks Mfg.*, 592 F.3d at 420).

The amount in controversy is determined by the amount pled in the complaint, unless it is apparent to a legal certainty that the plaintiff cannot recover that amount. *See Huber v. Taylor*, 532 F.3d 237, 243 (3d Cir. 2008) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). In making this determination, "'[t]he temporal focus of the court's evaluation . . . is on the time that the complaint was filed.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (alterations in original) (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)). Thus, "events occurring subsequent to the filing of the complaint that reduce the amount in controversy below the statutory limit do not oust the court's jurisdiction." *Nationwide Mut. Fire Ins. Co. v. T & D Cottage Auto Parts & Serv., Inc.*, 705 F.2d 685, 687 (3d Cir. 1983) (citing *Wade v. Rogala*, 270 F.2d 280, 284 (3d Cir. 1959)); *see also St. Paul Mercury Indem.*, 303 U.S. at 289-90.

Here, Plaintiff is a corporation incorporated in Delaware with its principal place of business in New Jersey. (Am. Compl. ¶ 1). MI PTS8 is an LLC, and upon information and belief, Iyer and McCune are the only members of MI PTS8. (*Id.* at ¶¶ 2, 5). Iyer and McCune are citizens of Arizona (*id.* at ¶¶ 3-4), and thus MI PTS8 is likewise a citizen of Arizona. Additionally, Plaintiff pled $84,000.00 in liquidated damages and $50,282.32 in additional fees resulting from MI PTS8's alleged conduct, which is above the required $75,000.00 (*See id.* at ¶¶ 33, 42, 46, 52).

Thus, the Court finds it has subject matter jurisdiction over this action because the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

    ii.  <u>Personal Jurisdiction</u>

"'The United States Supreme Court has held that a contractual consent to personal jurisdiction should be enforced unless it would be unreasonable or unjust to do so.'" *Knights*

*Franchise Sys., Inc. v. Patel*, No. 16-1707, 2017 WL 5191805, at *3 (D.N.J. Nov. 9, 2017) (quoting *Park Inn Int'l, LLC v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 373 (D.N.J. 2000)). In *Knights Franchise*, the district court found the parties' contractual consent "to the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey" constituted a valid consent to personal jurisdiction and venue in New Jersey. *Id.*

Here, the Franchise Agreement specifically states that MI PTS8 expressly consents and waives its "objection to the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey for all cases and controversies under this Agreement[.]" (Am. Compl. ¶ 7; Ex. A to Am. Compl. § 17.6.3). Like the *Knights Franchise* court, this Court "sees no reason why this freely agreed-upon consent to personal jurisdiction in New Jersey should not be enforced." *Knights Franchise*, 2017 WL 5191805, at *3; *see also National Equip. Rental, Ltd. v. Szukhert*, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court.").

Therefore, the Court finds it has personal jurisdiction over MI PTS8.

   iii. <u>Service of Process</u>

"'Before the Court can enter default judgment, it must find that process was properly served on the Defendant.'" *Maretz v. Grabato*, No. 22-4045, 2023 WL 3098486, at *1 (D.N.J. Apr. 26, 2023) (quoting *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-0624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)). As a limited liability company, MI PTS8 could be properly served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). On May 11, 2021, MI PTS8 the Summons and Complaint were personally served to Iyer, as "Statutory Agent of LLC and Member of" MI PTS8.

10

(ECF No. 6). The Firm filed an Answer to the Complaint and Amended Complaint on behalf of behalf of MI PTS8, Iyer, and McCune. (ECF Nos. 13, 36).

Therefore, the Court finds service was proper.

iv. Sufficiency of the Amended Complaint's Allegations

Here, Plaintiff brings a breach of contract claim against MI PTS8. (*See generally* Am. Compl.; *see also* MDJ Br. at 6). "[T]o state a claim for breach of contract under New Jersey law, a plaintiff must establish that (1) a valid contract exists between the parties, (2) the defendant failed to perform its obligations under that contract, and (3) the plaintiff suffered damages as a result." *Financial Serv. Vehicle Tr. ex rel. BMW Fin. Servs. NA, LLC v. Keitt*, No. 23-23188, 2025 WL 670014, at *3 (D.N.J. Mar. 3, 2025) (citing *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. Apr. 18, 2007)); *see also Wedgewood Gardens Condo. Ass'n, Inc. v. Wedgewood Gardens Devs., Inc.*, 2025 WL 400761, at *6 (N.J. Super. Ct. App. Div. Feb. 5, 2025) ("A cause of action exists for breach of contract when the plaintiff can demonstrate that there exists 'a valid contract, defective performance by the defendant, and resulting damages.'" (quoting *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985))).

Here, Plaintiff alleged that (i) it and MI PTS8 entered into a valid contract, the Franchise Agreement, and Iyer and McCune provided Plaintiff with a valid Guaranty of MI PTS8's obligations under the Franchise Agreement) (Am. Compl. ¶¶ 10, 20); (ii) MI PTS8 breached the Franchise Agreement when it stopped operating the Facility as a Super 8® guest lodging facility and failed to pay Plaintiff the liquidated damages and outstanding Recurring Fees (*id.* at ¶¶ 34, 41-42, 46); and (iii) Plaintiff suffered resulting damages in the amount of $84,000.00, plus outstanding Recurring Fees in the amount of $50,282.32.[3] (*Id.* at ¶¶ 24, 35, 39, 42, 46-47, 51).

---

[3] Plaintiff states "[t]he outstanding Recurring Fees and part of the liquidated damages owed by defendants in this matter were satisfied by the confidential settlement agreement entered into with . . . McCune on November 3, 2023.

Therefore, the Court finds that Plaintiff has sufficiently alleged a cause of action for breach of contract and the threshold requirements for default judgment have been met. The Court now turns to determining liability and damages.

### v. Liability and Appropriateness of Default Judgment

To determine whether granting default judgment is proper, the Court must make factual findings regarding "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady*, 250 F.R.D. at 177 (citing *Emcasco Ins.*, 834 F.2d at 74). The Court finds that all factors weigh in favor of granting default judgment. First, Plaintiff has been prejudiced because MI PTS8 failed to timely respond to the Complaint and Summons. *See Peterson v. Boyarsky Corp.*, No. 8-1789, 2009 WL 983123, at *4 (D.N.J. Apr. 8, 2009) ("Plaintiffs will be prejudiced if no default judgment is entered, because they have no other means of vindicating their claim against [MI PTS8]."). Second, the facts alleged provide no indication that MI PTS8 has a meritorious defense. *See GP Acoustics, Inc. v. Brandnamez, LLC*, No. 10539, 2010 WL 3271726, at *4 (D.N.J. Aug. 17, 2010) ("Defendant's failure to answer makes it practically impossible for the Court to determine whether the defendant has a meritorious defense.") (citation modified). Third, MI PTS8 is presumptively culpable as it failed to respond to the Complaint. *See Slover. v. Live Universe, Inc.*, No. 8-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("Defendant is presumed culpable where it has failed to answer, move, or otherwise respond.") (citation modified); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the

---

[Plaintiff] is only seeking the remainder of the liquidated damages and the accrued interest as a result." (MDJ Br. at 7 n.4; Mallet MDJ Aff. ¶ 26; Couch MDJ Cert. ¶ 7). In its motion for default judgment, Plaintiff adjusted the $84,000 amount of liquidated damages it is seeking to $63,064.84 and $52,185.80 in interest. (MDJ Br. at 7; Mallet MDJ Aff. ¶¶ 27-28).

plaintiff and the court can constitute culpability).

Therefore, the Court finds entry of default judgment against MI PTS8 is proper. Accordingly, Plaintiff's motion is **GRANTED** as to MI PTS8's liability.

### B. Summary Judgment is Granted Because Iyer Breached the Terms of the Guaranty.

Plaintiff moves for summary judgment against Iyer with respect to Count Six, which is premised on Iyer's purported breach of the Guaranty Agreement. (*See* MSJ Br. at 8-11). To be entitled to a judgment on a guaranty, a plaintiff must demonstrate:

1) execution of the guarantee by the guarantor (i.e., that it was the defendant who signed the guarantee);

2) the principal obligation and terms of the guaranty;

3) the lender's reliance on the guaranty in extending monies to the borrower;

4) default by the principal obligator;

5) written demand for payment on the guarantee;

6) failure of the guarantor to pay upon written demand[.]

*U.S. on Behalf of Small Bus. Admin. v. DelGuercio*, 818 F. Supp. 725, 727-28 (D.N.J. 1993) (citing 38 C.J.S. Guaranty §§ 8-14 and 38 Am. Jur. 2d § 119).

Here, it is uncontested that Iyer provided Plaintiff with a Guaranty. (PSOF ¶ 25). The terms of the Guaranty are unambiguous and require that upon default under the Franchise Agreement, Iyer would "immediately make each payment and perform or cause [MI PTS8] to perform, each unpaid or underperformed obligation of [MI PTS8] under the [Franchise] Agreement." (Mallet MSJ Aff., Ex. C). The express terms of the Guaranty indicate that its execution induced Plaintiff to enter into the Franchise Agreement. (*Id.*) The record is also clear that MI PTS8 defaulted under the Franchise Agreement and that Plaintiff provided Iyer with written notice of default and demand

for payment on the Guaranty. (PSOF ¶¶ 30-31, 34). Finally, Iyer admits that he did not pay amounts owed to Plaintiff. (*Id.* at ¶ 33). As a result, there is no genuine issue of material fact as to the breach of the Guaranty and summary judgment will be granted against Iyer as to Count Six only.

### C. Plaintiff is Entitled to Liquidated Damages and Attorneys' Fees.

"Although the facts pled in the Complaint are accepted as true for the purpose of determining liability [for default judgments], the plaintiff must prove damages" *Moroccanoil*, 2015 WL 6673839, at *2 (citing *Comdyne*, 908 F.2d at 1149). Here, Plaintiff requests liquidated damages in the amount of $115,250, inclusive of prejudgment interest, from MI PTS8 and Iyer. (*See* MDJ Br. at 7-8; MSJ Br. at 12-15). Plaintiff also seeks attorneys' fees and costs from Iyer but does not provide the requested amount or any documents in support of its request. (*See* MSJ Br. at 15-16). The Court addresses each category of damages in turn.

i. Liquidated Damages

Plaintiffs seeks $63,064.84 in liquidated damages and $52,185.80 in interest. (MDJ at 7-8; MSJ Br. at 12-15). "Under New Jersey law, liquidated damages clauses may only be enforced if they reasonably forecast the harm resulting from breach." *Knights Franchise Sys., Inc. v. First Value RC, LLC*, No. 13-4976, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citing *Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 106 (N.J. 1994)). "[W]hen a liquidated damages clause for a commercial transaction is negotiated by parties with comparable bargaining power, the ultimate issue is whether the amount of liquidated damages is reasonable, either at the time of contract formation or the breach." *Ramada Worldwide Inc. v. Columbia SC Hospitality, LLC*, No. 17-13020, 2018 WL 3105421, at *5 (D.N.J. June 25, 2018) (citing *Wasserman's*, 645 A.2d at 107); *see also Norwest Bank Minn., N.A. v. Blair Rd. Assocs., L.P.*, 252 F. Supp. 2d 86, 94 (D.N.J. 2003) ("Liquidated damages provisions in a commercial contract between sophisticated

parties are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness.") (citation modified). Prejudgment interest on liquidated damages claims is permitted in breach of contract claims, and "'will be awarded from the time it accrues until the time judgment is entered.'" *Ramada Worldwide*, 2018 WL 3105421, at *5 n.2 (quoting *Knights Franchise Sys.*, 2017 WL 1170849, at *4).

Section 12.1 of the Franchise Agreement sets out a formula for liquidated damages. (*See* Mallet MDJ Aff., Ex. A at 26; Mallet MSJ Aff., Ex. A at 27). Here, the applicable formula is "2,000 multiplied by the number of guest rooms that [Plaintiff] authorized [MI PTS8] to operate under Schedule B of this Agreement, regardless of any room reduction." (*Id.*). Pursuant to Schedule B of the Franchise Agreement, MI PTS8 was authorized to operate 42 guest rooms. (Mallet MDJ Aff., Ex. A at 42; Mallet MSJ Aff., Ex. A at 43). Thus, $2,000.00 multiplied by 42 guest rooms MI PTS8 was authorized to operate totals $84,000.00. However, as Plaintiff argues, and MI PTS8 and Iyer fails to contest, it received a partial payment towards the outstanding liquidated damages from McCune pursuant to a Settlement Agreement. (Mallet MDJ Aff., ¶ 26; Mallet MSJ Aff., ¶ 39). Therefore, Plaintiff is seeking the remaining balance of $63,064.84 in liquidated damages. (Mallet MDJ Aff., ¶¶ 26-27; Mallet MSJ Aff., ¶¶ 39-40). The rationale behind the Franchise Agreement's liquidated damages clause is "to forecast . . . the nature of lost Recurring Fees that [Plaintiff] would otherwise have received but for the premature termination." (Mallet MDJ Aff., ¶ 20; Mallet MSJ Aff., ¶ 32). The Court is satisfied that $63,064.84 in liquidated damages reasonably forecasts the harm that Plaintiff would suffer as a result of a breach of the Franchise Agreement and is not disproportionate to the loss Plaintiff would likely suffer as a result of early termination. *See Elkins Motel Assocs.*, 2005 WL 2656676, at *10; (*see also* Mallet MDJ, Ex. A at 26; Mallet MSJ Aff., Ex. A at 27).

Further, the Court agrees with Plaintiff that the prejudgment interest rate of 1.5 percent applies to the liquidated damages sum. (*See* Mallet MDJ Aff., Ex. A at 20 (establishing a 1.5% interest rate on all unpaid sums); Mallet MSJ Aff., Ex. A at 21 (same)); *see also Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, No. 02-2889, 2005 WL 3164205, at *10 (D.N.J. Nov. 10, 2005), *aff'd*, 244 F. App'x 522 (3d Cir. 2007) (finding plaintiff was "entitled to prejudgment interest at the rate of 1.5% per month" where the license agreement provided for monthly interest at that rate). Section 12.1 of the Franchise Agreement provides, in pertinent part, MI PTS8 "will also pay any applicable Taxes assessed on such payment and *Interest* calculated under Section 7.3 accruing from 30 days after the termination." (Mallet MDJ Aff., Ex. A at 26; Mallet MSJ Aff., Ex. A at 27) (emphasis added). Section 7.3 of the Franchise Agreement expressly states: "'Interest' is payable on any past due amount payable to [Plaintiff] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid. Interest is payable when [MI PTS8] receive[s] [Plaintiff's] invoice." (Mallet MDJ Aff., Ex. A at 20; Mallet MSJ Aff., Ex. A at 21).

Notwithstanding, the Court disagrees with Plaintiff as to the date that liquidated damages began to accrue. Plaintiff contends the accrual date is July 1, 2020, "thirty (30) days from the date of termination." (MDJ Br. at 7-8; MSJ Br. at 15). However, Section 11.2 of the Franchise Agreement provides Plaintiff "may terminate this Agreement when we send written notice to [MI PTS8] or such later date as required by law or as stated in the default notice, when . . . (2) [MI PTS8] discontinue[s] operating the Facility as a "Super 8" or a "Super 8 by Wyndham[.]" (Mallet MDJ Aff., Ex. A at 24; Mallet MSJ Aff., Ex. A at 25). Under this provision, it was Plaintiff that terminated the Franchise Agreement at its option by sending Iyer a letter dated June 29, 2020, effectively declaring, MI PTS8 in breach of the Franchise Agreement. (Mallet MDJ Aff., Ex. D;

16

Mallet MSJ Aff., Ex. D). As such, the liquidated damages accrued thirty days after that letter, on July 29, 2020. Accordingly, Plaintiff is entitled to $56,322.10 in interest[4] – July 29, 2020 (the first day liquidated damages was due under Section 12.1 of the Franchise Agreement, i.e., thirty days after the June 29, 2020 termination date) through the date of this Opinion, July 14, 2025, a period of 1,805 days. *See Ramada Worldwide Inc. v. Highend Hotel Grp. of Am.*, No. 20-14020, 2024 WL 4903559, at *7 (D.N.J. Nov. 26, 2024) (awarding prejudgment interest on liquidated damages from thirty days after the plaintiff terminated the franchise agreement by sending a letter declaring the plaintiff was in breach through the day judgment was entered); *Ramada Worldwide Inc. v. Keys Hospitality, LLC*, No. 18-3993, 2025 WL 27406, at *6 (D.N.J. Jan. 23, 2025) (same); *Days Inn Worldwide, Inc. v. Savita Hosp. Grp.*, No. 13-2863, 2014 WL 3748204, at *3-4 (D.N.J. July 28, 2024) (same); *Honeysuckle Enters.*, 2005 WL 3164205, at *10 (same). Liquidated damages plus interest therefore totals $119,386.94.

    ii.   Attorneys Fees' and Costs

Finally, Plaintiff argues it is entitled to attorneys' fees and costs in this matter. (MSJ Br. at 15-16). Section 17.4 provides, in pertinent part: "The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Mallet MSJ Aff., Ex. A at 32). The Court is satisfied that Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to Section 17.4 of the Franchise Agreement. *See Jackson Hewitt, Inc. v. Barnes Enters.*, No. 10-05108, 2012 WL 1600572, at *3 (D.N.J. May 7, 2012) (awarding attorneys' fees and costs per franchise

---

[4] The interest rate of 1.5 percent per month is equivalent to a rate of 18 percent per year. (Mallet MDJ Aff., ¶ 28; Mallet MSJ Aff., ¶ 41). Eighteen percent per year of the $63,064.84 liquidated damages amount is $11,351.67. (*Id.*). That amount divided by 365 days in a year equals the *per diem* amount of interest due: approximately $31.10. (*See id.*) From July 29, 2020 (the first day liquidated damages were due under Section 12.1 of the Franchise Agreement, i.e., thirty days after the June 29, 2020 termination date), to the date of this Opinion, July 14, 2025, 1,811 days elapsed. Thus, the product of $31.10 multiplied by 1,811 equals the prejudgment interest due for the period: $56,322.10.

agreement); *Red Roof Franchising, LLC v. AA Hosp. Northshore, LLC*, 877 F. Supp. 2d 140, 154 (D.N.J. 2012) (holding that plaintiff was entitled to attorneys' fees and costs because "[d]efendants d[id] not dispute the provision in the franchise agreement or guarantee awarding reasonable attorneys' fees and costs").

However, Plaintiff "does not provide any bills or invoices to support" its request for attorneys' fees and costs. *BMO Harris Bank, N.A. v. Naileen Transp. Corp.*, No. 21-14002, 2021 WL 5506911, at *4 (D.N.J. Nov. 19, 2021). There are no details before the Court regarding the amount requested in attorneys' fees and costs, and as such, the Court is incapable of determining whether Plaintiff's request for attorneys' fees and costs are reasonable and appropriate. *See id.*; *see also* L. Civ. R. 54.2(a) (providing that an attorney seeking fees must provide a description of the services rendered, including the date of service, the billing rate, and who performed the work). Plaintiff is provided leave to submit documentation to support its attorneys' fees and costs pursuant to Local Civil Rule 54.2.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's motion for default (ECF No. 76) is **GRANTED** against MI PTS8; and Plaintiff's motion for summary judgment (ECF No. 77) is **GRANTED** against Iyer as to Count Six only. Plaintiff is entitled to $63,064.84 in liquidated damages and $56,322.10 in interest on the liquidated damages award. The Court **RESERVES** decision on attorneys' fees and costs pending the Court's review and receipt of supplemental submissions as instructed herein.

DATED: July 14, 2025

HONORABLE JULIEN XAVIER NEALS
United States District Judge